IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

F I L E D

AUG 1 1 2017

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

CHARLES FRANK CANALE, JR.,

    Petitioner,

v.                         Civil Action No. 3:16CV400

HAROLD W. CLARKE,

    Respondent.

## MEMORANDUM OPINION

Charles Frank Canale, Jr., a Virginia inmate proceeding with counsel, submitted a 28 U.S.C. § 2254 petition (hereinafter "§ 2254 Petition," ECF No. 1) challenging his 2012 convictions in the Circuit Court of the City of Williamsburg and County of James City ("Circuit Court"). Canale argues that he is entitled to relief on the following grounds:[1]

Claim One:    "The trial court erred in denying Canale's motion to inspect the original computer evidence — Due Process and Sixth Amendment violations." (Mem. Supp. § 2254 Pet. 4.)

Claim Two:    "The trial court erred in upholding the trial court's decision to deny Canale's motions to strike because the Commonwealth had not proved beyond a reasonable doubt that Canale knew or should have known that "ridergurl80" was under 15-years-old — insufficient evidence under the Fourteenth Amendment." (Id. at 8.)

---

[1] The Court corrects the capitalization in quotations from Canale's submissions.

Clarke has moved to dismiss the action. (ECF No. 10.) Canale has responded. (ECF No. 13.) As discussed below, Canale's Claim One is procedurally defaulted and thus is barred from review here. Additionally, Claims One and Two lack merit. Thus, for the reasons that follow, the Motion to Dismiss will be granted.

## I.   PROCEDURAL HISTORY

After a bench trial, the Circuit Court convicted Canale of six counts of soliciting sex with a child less than 15 years of age by using a computer and one count of attempted indecent liberties. (See ECF No. 12-1, at 1.) The Circuit Court sentenced Canale to 120 years of incarceration with 65 years suspended. (Id. at 2.) Canale appealed his convictions, raising there the following two assignments of error that are relevant here:

> 1.   The Trial Court Erred in Denying Canale's Motion to Inspect Investigator Gibbs' Computer
>
> 2.   The Trial Court Erred in Denying Canale's Motion to Strike and Renewed Motion to Strike Because the Commonwealth Had Not Proved Beyond a Reasonable Doubt that Canale Knew or Should Have Known that "ridergurl80" was Under 15-Years-Old

Petition for Appeal 5, Canale v. Commonwealth, No. 2349-12-1 (Va. Ct. App. Apr. 1, 2013). The Court of Appeals of Virginia denied the petition for appeal. (ECF No. 12-2, at 1.) The Supreme Court of Virginia refused the subsequent petition for

appeal. Canale v. Commonwealth, No. 131763, at 1 (Va. Mar. 28, 2014).

Canale, by counsel, Domingo J. Rivera, Esq., filed a petition for a writ of habeas corpus in the Circuit Court raising the same two claims as he presented as Assignments of Error 1 and 2 in his petition for appeal in the Court of Appeals of Virginia. Petition for Writ of Habeas Corpus 5, 10, Canale v. Clarke, No. CL15-736 (Va. Cir. Ct. June 2, 2015). The Circuit Court dismissed Canale's habeas petition finding that "Canale's claims are the same as those he presented on direct appeal because habeas corpus may not serve as an additional appeal or as a forum in which to relitigate issues already decided against Canale in prior proceedings. Henry v. Warden, 265 Va. 246, 249, 576 S.E.2d 495, 496 (2003); see also Hawks v. Cox, 211 Va. 91, 175 S.E.2d 271 (1970)." (ECF No. 12-4, at 1-2.) The Supreme Court of Virginia dismissed the petition for appeal. (ECF No. 12-5, at 1.)

Thereafter, Canale, again by counsel Rivera, filed the pending § 2254 Petition.

## II. BASIC PRINCIPLES GOVERNING HABEAS PETITIONS

### A. Exhaustion And Procedural Default

The exhaustion requirement "'is rooted in considerations of federal-state comity,'" and in the Congressional determination

reflected in the federal habeas statutes "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must use all available state remedies before he can apply for federal habeas relief. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)) (additional internal quotation marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in

4

each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (quoting Duncan, 513 U.S. at 365-66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994-95 (4th Cir. 1994).

Virginia's chosen procedural scheme requires prisoners seeking habeas relief to use a standard form prescribed by statute. See Va. Code Ann. § 8.01-655 (West 2017). The "form is divided into sections, each of which contains simple prompts directing the petitioner to provide the basic information necessary to review his conviction." Mallory, 27 F.3d at 992. The failure to complete properly the form with respect to a particular claim may preclude a finding that the inmate fairly presented the claim to the Virginia courts. Id. at 995-96.

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine

provides that, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1). The burden of pleading and proving that a claim is procedurally defaulted rests with the state. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989).

### B. Applicable Constraints On Federal Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's

authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable— a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

These general principles, and the claim specific precepts guide the resolution of Canale's petition.

### III. ANALYSIS OF CLAIM ONE

Canale was convicted of conduct that occurred on the internet in a so-called "chat room." In sum, Canale thought he

was arranging a sexual liason with a minor woman when, in fact, he was communicating with a law enforcement officer, William R. Gibbs ("Gibbs"). Gibbs used a police computer during the communications, and it is access to that computer that is the issue raised in Claim One.[2]

In that claim, Canale argues that the "[t]rial court erred in denying [his] motion to inspect the original computer [the one used by Gibbs] — Due Process and Sixth Amendment violations." (Mem. Supp. § 2254 Pet. 4.) Clarke argues that Canale failed to exhaust Claim One as presented here because Canales did not include a claim of due process or the Sixth Amendment in either his direct appeal or in his habeas petition. It is undisputed that Canale did not include the words "due process" or "Sixth Amendment" in Assignment of Error One.[3] With respect to Claim One, Canale counters that he did indeed raise the due process aspect of the current claims in the state

---

[2] A full recitation of the evidence is set out in the analysis of Claim Two. That recitation is not necessary to the analysis of Claim One.

[3] Clarke also argues that Canale failed to exhaust Claim Two here, because he did not include a due process claim in his direct appeal or habeas petition. With respect to Claim Two, Canale did not need to use the words "due process" in state court to raise a federal challenge to the sufficiency of the evidence. Instead, "[a]ny challenge to the sufficiency of the evidence to convict in a state prosecution is necessarily a due process challenge to the conviction." West v. Wright, 931 F.2d 262, 266 (4th Cir. 1991) (citations omitted), rev'd on other grounds, 505 U.S. 277 (1992). Accordingly, Clarke has not demonstrated that Claim Two is defaulted.

courts. As explained below, this argument is riddled with problems making it difficult for the Court to decide whether the due process portion of this claim is defaulted.

### A. The Due Process Aspect Of Claim One

In support of Claim One, and Assignment of Error One, Canale relies principally on Jones v. Sussex I State Prison, 591 F.3d 707, 713 (4th Cir. 2010), for the proposition that a "litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim . . . a case deciding such a claim on federal grounds." Id. (citation omitted). Canale argues that, because, on a single occasion, in the body of his supporting argument of the "Petition for Appeal with the Supreme Court of Virginia," he cited to a case that mentioned "due process," and because he cited one state case that cited a federal due process case, he has "properly alerted the state courts of his Due Process claim." (Mem. Opp'n Mot. Dismiss 4-5, ECF No. 13.) Counsel then provides a quote and a citation to "Respondent's Motion to Dismiss, Exhibit 3, p.16" to support the argument that he indeed raised a due process claim in state court. (Id. at 5 (emphasis omitted).)

As an initial matter, it is unclear what document Canale intends to cite here. To the extent that he intends to cite to

Clarke's Brief in Support of Motion to Dismiss, the Court finds that Exhibit 3, page 16 does not contain the quoted text on which Canale relies. (See ECF No. 12-3, at 16.) Even assuming that Canale intended to cite to the previous page of Exhibit 3, which is the Petition for Appeal filed in the Supreme Court of Virginia on November 8, 2013, the quoted language in the Memorandum in Opposition to Clarke's Motion to Dismiss is not a direct quote from that page of the Petition for Appeal. (Compare Mem. Opp'n Mot. Dismiss 5, ECF No. 13, with ECF No. 12-3, at 15.) Instead, it appears that Canale's counsel has edited the quoted text by adding new citation information that was not included in the Petition for Appeal. That impropriety appears to be an attempt to show that Canale truly raised a due process claim in state court. In so doing, counsel has demonstrated a lack of candor with the Court, but he has not proved his point.

In the Petition for Appeal filed by Canale in the Supreme Court of Virginia on November 8, 2013, in support of the first assignment of error, the opening paragraph provided the following:

> The right of a defendant to call for evidence in his favor "is central to the proper functioning of the criminal justice system. It is designed to ensure that the defendant in a criminal case will not be unduly shackled in his effort to develop his best defense." Massey v. Commonwealth, 230 Va. 436, 442 (1985). Article 1, § 8 of the Constitution of Virginia states this "includes the right to prepare for trial by procuring both testimonial and

documentary evidence." Gilchrist v. Commonwealth, 227 Va. 540, 545 (1984) (internal citations omitted). "[T]he right to call for evidence in his favor, including the right to prepare for trial . . . and to ascertain the truth . . . lie at the heart of a fair trial, and when they are abridged, an accused is denied due process." Id. at 547 (internal citations omitted). "[A] criminal trial is fundamentally unfair if the State proceeds against [a] . . . defendant without making certain that he has access to the **raw materials** integral to the building of an effective defense." Henshaw v. Commonwealth, 19 Va. App. 338, 334 (1994) (emphasis added). "[A]ll relevant facts must be available to both the prosecution and the defense in order to preserve the [adversarial] system's integrity." Id.

(ECF No. 12-3, at 15.) The remainder of the argument contains references to the Virginia Code, the Rules of the Supreme Court of Virginia, and state court cases about the "reasonableness" of his motion to inspect. All of those authorities are cited in support of the contention that "[t]he Court of Appeals erred in holding the trial court did not abuse its discretion by denying Canale's motion to inspect Investigator Gibbs' work computer, which he used to allegedly chat with Canale." (Id. at 16-20.) None of those authorities are offered in connection with a due process argument.

It is unsurprising that the Court of Appeals of Virginia dismissed the earlier version of this claim without mentioning due process or the United States Constitution, finding instead that the claim lacked merit under state rules. (ECF No. 12-2,

at 1-2.) The Supreme Court of Virginia summarily refused Canale's petition for appeal.

In his state Petition for a Writ of Habeas Corpus, Canale raised the same underlying claim as in his direct appeal. Using the statutorily prescribed form,[4] Canale was represented that the claims raised therein "[were] presented during Canale's direct appeal proceedings." Petition for Writ of Habeas Corpus 11-12, Canale v. Clarke, No. CL15-736 (Va. Cir. Ct. June 2, 2015). In response to the question [in the form], "[i]f any ground set forth in 14 has not been presented to a court, list each ground and the reason why it was not," counsel stated: "Not Applicable." See id. at 12.

In the body of the state Petition for Writ of Habeas Corpus, counsel mentioned the term "due process" once in the context of a quote, however, the thrust and substance of the claim is based on state discovery and evidentiary principles. See id. at 5-9. The Circuit Court dismissed Canale's habeas petition finding that

> Canale's claims are the same as those he presented on direct appeal. The Court holds that habeas corpus may not serve as an additional appeal or as a forum in which to relitigate issues already decided against Canale in prior proceedings. Henry v. Warden, 265 Va. 246, 249, 576 S.E.2s 495, 496 (2003);

---

[4] Counsel appears to have typed the entire Petition for Writ of Habeas Corpus in his own format, but the Court will assume that it follows the statutorily prescribed form required by the Virginia Code.

see also <u>Hawks v. Cox</u>, 211 Va. 91, 175 S.E.2d 271 (1970).

(ECF No. 12-4, at 1.) The Supreme Court of Virginia dismissed the petition for appeal. (ECF No. 12-5, at 1.)

On this record, the Court cannot find that the federal constitutional aspect of Claim One was fairly presented to the state courts in accordance with Virginia's "chosen procedural scheme." <u>Mallory v. Smith</u>, 27 F.3d 991, 995 (4th Cir. 1994). On direct appeal, Claim One was presented as a violation of state law. Although counsel raised this claim again in state habeas, he represented that these were the same claims that had been raised on direct appeal (<u>i.e.</u>, violations of state law). Petition for Writ of Habeas Corpus 11-12, <u>Canale</u>, No. CL15-736. Understandably, the Circuit Court rejected this claim on the ground that it had been previously decided on direct appeal.[5]

In light of Canale's representation on the statutorily prescribed form, the Court cannot find that any reference to due process in Canale's submissions to the Circuit Court in his state habeas "would suffice to fairly present the constitutional aspect of [this] claim[]." <u>Reyes v. Kelly</u>, No. 3:09CV23-HEH, 2009 WL 3109856, at *4 (E.D. Va. Sept. 25, 2009) (citing

---

[5] Because the Circuit Court was the last reasoned state court decision on this point, its reasoning is imputed to the Supreme Court of Virginia, which refused further review without discussion of the claims. <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991).

Mallory, 27 F.3d at 996) (explaining that it was "unlikely" that petitioner had fairly presented federal constitutional aspects of claims in accordance with Virginia's "chosen procedural scheme" under similar circumstances).

For the first time in Claim One of this § 2254 Petition, counsel inserts at the beginning of the supporting argument two federal cases pertaining to due process. (Mem. Supp. § 2254 Pet. 4-5.) After that introduction, the argument from state court is repeated complete with citation to rules of the Supreme Court of Virginia and relies almost exclusively state law cases. (Id. at 5-8.)

Counsel argues that the due process aspect of the claim is not defaulted because he "expressly claimed that a due process violation had occurred when the Court refused to Order the Commonwealth to cause or permit inspection of the evidence." (Mem. Opp'n 5.) Counsel also contends that he "expressly" raised a due process claim by quoting the following: "[T]he right to call for evidence in his favor, including the right to prepare for trial . . . and to ascertain the truth . . . lie at the heart of a fair trial, and when they are abridged, an accused is denied due process. [Gilchrist v. Comm., 227 Va. 540,] 547 [(1984)]." (Mem. Opp'n Mot. Dismiss. 5.) Finally, counsel argues that he:

14

cited federal due process cases to support his
assignments of error in the Virginia courts.
Petitioner's due process argument was based, <u>inter
alia</u>, in <u>Henshaw v. Commonwealth</u>, 19 Va. App. 338
(1994). Henshaw [sic] quotes <u>Ake v. Oklahome</u> [sic], a
federal due process case, for supporting its ruling
that due process is denied when a defendant is denied
access to the 'raw materials integral to the building
of an effective defense.' <u>Henshaw</u>, 19 Va. App. at
344. Furthermore, the <u>Henshaw</u> due process analysis is
further predicated in other federal Constitutional due
process decisions.

(<u>Id.</u> at 5.)

Although it is correct that <u>Henshaw</u> (a state case) cites

the federal case, <u>Ake v. Oklahoma</u>, 470 U.S. 68, 77 (1985), in

one portion of its discussion of due process, the appellant, in

<u>Henshaw</u>, actually had raised a "Virginia constitutional due

process argument." <u>Henshaw v. Comm.</u>, 451 S.E.2d 415, 418 (Va.

Ct. App. 1994). Indeed, in its holding in <u>Henshaw</u>, the Court of

Appeals of Virginia explained: "We hold that the due process

rights of Article I, Section 8 of the Virginia Constitution give

a criminal defendant a right to view, photograph, and take

measurements of the crime scene . . . ." <u>Id.</u> at 419. Thus,

contrary to counsel's suggestion here, the citation to <u>Henshaw</u>

does not satisfy the example found in <u>Jones</u>, that a "litigant

wishing to raise a federal issue can easily indicate the federal

law basis for his claim in a state-court petition or brief . . .

by citing in conjunction with the claim . . . a <u>case deciding</u>

<u>such a claim on federal grounds</u>." <u>Jones</u>, 591 F.3d at 713

(citation omitted). Canale did little more than "scatter some makeshift needles in the haystack of the state court record." Id. (citation omitted) (internal quotation marks omitted); see Pethtel v. Ballard, 617 F.3d 299, 306 (4th Cir. 2010) ("Presenting the substance of the claim requires that the claim be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." (citation omitted)(internal quotation marks omitted).) Viewing the record as a whole, the Court finds that Canale failed to fairly present to the state courts the due process aspect of Claim One, and accordingly Claim One is defaulted and barred from review here. See Reyes v. Kelly, No. 3:09CV23-HEH, 2011 WL 5149975, at *3-4 (E.D. Va. Sept. 20, 2011).[6]

Although the due process aspect of Claim One was defaulted, his counsel was at fault for failing properly to raise that claim in state court. Counsel in this case, who also represented Canale in state court in his criminal proceedings and on collateral review, simply refuses to acknowledge his responsibility for defaulting the federal constitutional aspects

---

[6] Furthermore, "[w]hen the appeal is to a constitutional guarantee as broad as due process, it is incumbent upon a habeas petitioner to refer to the particular analysis developed in cases and not just due process in general in order to present his claim." Gray v. Netherland, 99 F.3d 158, 162 (4th Cir. 1996) (internal quotation marks omitted).

of Claim One. However, under Martinez v. Ryan, 566 U.S. 1 (2012) and Trevino v. Thaler, 133 S. Ct. 1911 (2013), the fact that counsel may have provided Canale with ineffective assistance of counsel at Canale's "initial-review collateral proceeding" may establish cause for the procedural default of this claim. Martinez, 566 U.S. at 17-18. Accordingly, the Court addresses the due process aspect of this claim on its merits.

## B. Merits Review Of Due Process Aspect Of Claim One

In Claim One, it is now argued that "[t]he trial court erred in denying Canale's motion to inspect the original computer evidence" amounting to a violation of due process. (Mem. Supp. § 2254 Pet. 4.) And, it is now contended that Canale's right to due process was violated when he was prohibited "from inspecting the most essential item of evidence offered by the prosecution, namely the electronic version of the chat logs."[7] (Id.) Upon review of the record, the Court fails to discern a violation of due process.

_____

[7] Because Canale did not raise the due process aspect of this claim in the state courts, the Court's review of the due process portion of Claim One is not pursuant to § 2254(d). Moreover, to the extent that Canale challenges the state court's determinations of the denial of the motion to inspect on the basis of state law, that he cannot do. The Circuit Court's purported error provides no basis for federal habeas corpus relief. Id. ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (citing

The Court of Appeals of Virginia aptly summarized the state law aspect of this claim as follows and found that it lacked merit:

> The Commonwealth provided appellant with documents transcribing the on-line chats between appellant and an on-line minor persona, "ridergurl1180" [sic] ("the victim"), created by Investigator Gibbs. Gibbs testified he copied and pasted the contents of the chats and then printed them as a word document. He stated he reviewed the printouts for accuracy in context, dates, and times as compared to what appeared on the computer screen depicting the exchanges between the appellant and the victim. Appellant had the opportunity to cross-examine Gibbs concerning the information and the procedures he used to create the documents. However, appellant sought to have access to what he referred to as the "raw evidence" contained on the police computer used by Gibbs and metadata in order to determine whether there were any inconsistences in the time frames or any alterations or modifications between the evidence as contained on the computer and the copies of the chats the Commonwealth provided to appellant.
>
>> There is no general constitutional right to discovery in a criminal case, even where a capital offense is charged. While a defendant has the right to exculpatory evidence in the Commonwealth's possession upon request, Rule 3A:11 defines the other discovery available to the accused in a felony case. Under Rule 3A:11, a felony defendant is entitled to his own "written or recorded statements" made to law enforcement personnel, certain written reports in the possession of the Commonwealth, and "tangible objects . . . within the possession, custody, or control of the Commonwealth" which "may be material to the

cases for the proposition that "federal habeas corpus relief does not lie for errors of state law"). Accordingly, any state law aspect of Claim One will be dismissed.

> preparation of [the] defense." Rule
> 3A:11(b).

> Juniper v. Commonwealth, 271 Va. 362, 394, 626 S.E.2d
> 383, 404 (2006) (case citations omitted).
>> Appellant makes no allegation that the evidence
> was exculpatory. In addition, appellant "does not
> assert that any additional discoverable material
> actually exists or that he has any reason to believe
> that there is any which has not been disclosed." See
> id. at 394, 626 S.E.2d at 405. Appellant failed to
> show the evidence would be material to the preparation
> of his defense. As in Juniper, appellant's request
> was "a speculative search for evidence" which was not
> authorized by statute or rule of court. See id. at
> 394-95, 626 S.E.2d at 405. Accordingly, the trial
> court did not abuse its discretion by denying
> appellant's request.

(ECF No. 12-2, at 1-2 (alteration added).)

In support of the due process aspect of Claim One presented here, Canale cites predominantly state law and generally asserts that some broad federal due process right exists that entitled him to inspect the original electronic chat files. "[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded." Gray v. Netherland, 518 U.S. 152, 168 (1996) (citation omitted). The Due Process Clause does require the government to disclose to the defense prior to trial any exculpatory or impeachment evidence in its possession. Giglio v. United States, 405 U.S. 150, 153-55 (1972); Brady v. Maryland, 373 U.S. 83, 86-88 (1963).

19

Brady and its progeny "require[] a court to vacate a conviction and order a new trial if it finds that the prosecution suppressed materially exculpatory evidence." United States v. King, 628 F.3d 693, 701 (4th Cir. 2011). Accordingly, in order to obtain relief under Brady, a litigant must "(1) identify the existence of evidence favorable to the accused; (2) show that the government suppressed the evidence; and (3) demonstrate that the suppression was material." Id. (citing Monroe v. Angelone, 323 F.3d 286, 299 (4th Cir. 2003)). Undisclosed evidence is material when its cumulative effect is such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433-34 (1995) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). A reasonable probability is one sufficient to undermine confidence in the outcome. Kyles, 514 U.S. at 434. Nevertheless, "[t]here is no general constitutional right to discovery in a criminal case, and Brady, which addressed only exculpatory evidence, did not create one." Gray, 518 U.S. at 168 (internal quotation marks omitted) (citation omitted).

Canale believes that the Circuit Court denied him due process when it denied his motion to inspect the "original computer evidence" of the electronic chat files on Gibbs'

computer. (Mem. Supp. § 2254 Pet. 4.) The asserted purpose of the requested inspection was to examine the metadata in the file that reflects the conversation between Gibbs and Canale. Canale argues that "[t]here was a genuine issue as to the quality of what occurred in the chats across multiple days and times – not simply whether the chats took place, but that if they did occur, what exactly was said and when it was said." (Id. at 6.)

That argument lacks merit firstly because Canale has proffered no material, exculpatory evidence that a review of the electronic copies of the chat conversations would have yielded. Moreover, Gibbs testified that he verified each transcript of the chat conversation line-by-line for accuracy with the files in electronic copy. As the Circuit Court found, the transcripts of the online chats that were entered into evidence, were "accurate transcript[s] of the online conversations . . . I don't think there's any question of that." (Sept. 5, 2012 Tr. 182.) To the extent that Canale wished to receive the electronic version of the chat conversation to search for some unspecified inconsistency, the request for the inspection of the electronic chat logs is merely a speculative fishing expedition. Canale has not demonstrated that, if he had been allowed to inspect the original computer files of the electronic chats, a reasonable probability existed that the result of Canale's criminal proceedings would have been different. Kyles, 515 U.S.

at 433-44. Accordingly, Claim One would fail for lack of substantive merit, even if it had been properly presented to the state courts. Thus, the due process aspect of Claim One will be dismissed.

### C. The Sixth Amendment Aspect of Claim One

Combined with his due process claim, Canale also tersely argues that "[t]he trial court violated Canale's . . . Sixth Amendment rights by prohibiting the defense from inspecting the most essential item of evidence offered by the prosecution, namely the electronic version of the chat logs." (Mem. Supp. § 2254 Pet. 4.) He contends that "the Commonwealth's interference with the defense investigation and the trial court's endorsement of the same deprived Canale of his right to effective assistance of counsel." (Id.) Clarke correctly asserts that Canale never raised a Sixth Amendment challenge in state court, thus, that portion of Claim One is defaulted and barred from review here. In response, Canale argues that "petitioner's defense was shackled by lack of absence [sic] to critical evidence that counsel required for trial preparation . . . [t]his argument was repeatedly presented to the Virginia courts." (Mem. Opp'n Mot. Dismiss 7.) Canale never raised the Sixth Amendment in state court, and for that reason alone, the Sixth Amendment aspect of Claim One must be dismissed.

Even if a Sixth Amendment challenge had been properly presented to the state court,[8] Canale has not provided in this case anything other than a terse, conclusory argument for the unique and untenable proposition that the actions of a trial court can cause a Sixth Amendment ineffective assistance of counsel claim in this context.[9] Those conclusory and unsupported

_____

[8] Because Canale did not raise a Sixth Amendment claim in state court, the Court's review of this portion of Claim One is not pursuant to § 2254(d).

[9] Canale cites to Brown v. Dixon, 891 F.2d 490, 495 (4th Cir. 1989) and United States v. Cronic, 466 U.S. 648, 662 (1983), with little explanation, shifting the burden to the Court to discern the applicability of these cases in the first instance. (Mem. Opp'n Mot. Dismiss 7.) In Brown, the United States Court of Appeals for the Fouth Circuit affirmed in part, and reversed in part, the district court with minimal discussion of the ineffective assistance of counsel claim which contained many components not relevant here. 891 F.2d at 494-95. Turning to the underlying district court opinion, the petitioner argued that his defense team rendered ineffective assistance and the prosecution interfered with his criminal proceedings thereby violating his right to effective assistance of counsel. Brown v. Rice, 693 F. Supp. 381, 398 (W.D.N.C. 1988). In its brief discussion of this claim, wherein it found that the "state did not render defense counsel ineffective," id., the district court stated: "[T]he state violates the right to effective assistance of counsel when it interferes with the ability of counsel to conduct the defense. Strickland[ v. Washington], 466 U.S. [668,] 686 [1984]. Such interference is presumed when the state's conduct causes an actual breakdown of the adversarial process. [United States v. ] Cronic, 466 U.S. [648,] 657 [1984]." Id.
Here, Canale faults the Circuit Court, not the state, for, in essence, causing counsel to perform ineffectively. Canale fails to provide any argument indicating how and why Brown can be extended to the actions of the trial court. Moreover, to the extent that Brown has some application to this case, as discussed in conjunction with the merits review of Claim One, Canale wholly fails to demonstrate that "the interference was []

23

assertions do not present a cognizable Sixth Amendment claim. Cf. Sanders v. United States, 373 U.S. 1, 19 (1963) (finding denial of habeas appropriate where it "stated only bald legal conclusions with no supporting factual allegations"). Accordingly, the Sixth Amendment aspect of Claim One will be dismissed.

## IV. CLAIM TWO

Claim Two is a challenge to the sufficiency of the evidence, a claim that must be assessed with the trial evidence in mind. In perspective of the trial record, the application of the controlling legal principles shows that Claim Two must be dismissed.

---

of a sufficient magnitude to give rise to presumption that the adversarial process broke down." Id.; see also Cronic, 466 U.S. at 659-62.

In Cronic, the Supreme Court evaluated whether the state court's refusal to grant a continuance to counsel in a capital trial resulted in a denial of the effective assistance of counsel. In that case, the state court selected a random attorney who practiced real estate law, who had never tried a case, and who was barred in a different state, and also had indicated to the court that he was unwilling to represent the defendant on such short notice. Id. at 660, 665. The court appointed him anyhow and allowed him only 25 days to prepare when the Government had taken more than four years to investigate the case. Id. at 649, 660. Canale cites this case for the proposition that "[o]nly when . . . circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." (Mem. Opp'n Mot. Dismiss 7 (citing Cronic, 466 U.S. at 662).) Contrary to Canale's vague assertion, this is not such a case where the "surrounding circumstances justify a presumption of ineffectivess." Cronic, 466 U.S. at 662.

## A. Evidence Elicited At Trial

William R. Gibbs, a Senior Investigator with the James City County Police Department, and an agent with the Southern Virginia Internet Crimes Against Children Task Force, testified that, on November 30, 2011, he initiated an undercover investigation involving internet chatting. (Sept. 5, 2012 Tr. 7-8.) Gibbs used an Apple iMac located in a secure office in the police department. (Sept. 5, 2012 Tr. 8-9.) Gibbs registered an account on Yahoo! Chat under the name Claire Marie Gately, with a date of birth of July 9, 1980. (Sept. 5, 2012 Tr. 9.) Gibbs explained that he registered a date of birth of over eighteen years of age because individuals must state that they are at least eighteen to access chat rooms on Yahoo!. (Sept. 5, 2012 Tr. 9-10.) On November 30, 2011, Gibbs entered into the chatroom, "Virginia romance" under the screen name, "Ridergurl80." (Sept. 5, 2012 Tr. 12.) At 8:37 p.m., Gibbs was contacted by a person with the screen name "headhunterq2," an account registered to Canale.[10] (Sept. 5, 2012 Tr. 12.) Gibbs chatted with that person seven times between November 30 and

---

[10] It is undisputed that "headhunterq2" or "Chuck C." were the screen names used by Canale for all seven recorded chat conversations. Accordingly, when it makes sense to do so, the Court refers to Canale by name instead of to his online screen name. The Court also uses Gibbs's name or the term "the victim" in place of the screen name "Ridergurl80."

December 15, 2011, and always used the same computer at the police department. (Sept. 5, 2012 Tr. 12-13, 15.)

Gibbs enabled chat logging which allowed him to save the conversations that he engaged in. (Sept. 5, 2012 Tr. 13.) Gibbs copied and pasted the conversations into a Microsoft Word document, printed them, and then reviewed each chat by "individual line" (Sept. 5, 2012 Tr. 18) to ensure that they "accurately captured the communication [he] had with that particular person on those dates and times." (Sept. 5, 2012 Tr. 13-14.) Gibbs copied and pasted the conversations into Word, instead of printing each directly through the Yahoo! software from the chat on his screen, because "[i]t was easier to read." (Sept. 15, 2012 Tr. 16.) For some conversations, Gibbs "did a screen capture showing my screen with the actual chat being conducted." (Sept. 5, 2012 Tr. 16.) Gibbs then printed the conversation either the same night as the conversation took place or the following morning and provided the copies of the chat conversation to the Commonwealth's Attorney. (Sept. 5, 2012 Tr. 14-15, 17.)

During trial, Gibbs confirmed that the print-outs of the conversations that the Commonwealth's Attorney introduced at trial were accurate and that he had engaged in no other conversations with Canale other than those introduced at trial. (Sept. 5, 2012 Tr. 14-15.)

### 1.    November 30, 2011 Conversation

On November 30, 2011, Canale asked for Gibbs's "A.S.L. which is chat terminology for age, sex and location." (Sept. 5, 2012 Tr. 21.)    Gibbs responded that "I'm 14 and live in Williamsburg" to which Canale responded "oh," and then, "31, guy here."  (Sept. 5, 2012 Tr. 21-22.)    Canale later asked: "you must think I'm some kind of creep or something," and Gibbs replied: "no, why?"  Canale replied:  "I'm so much older than you."  (Sept. 5, 2012 Tr. 22.)    Nearly forty minutes later, Canale again stated:  "I'm kind of old for you." (Sept. 5, 2012 Tr. 22.)  Canale asked Gibbs to send him a photograph, and Gibbs forwarded a photograph of a female police officer taken when she was younger.  (Sept. 5, 2012 Tr. 23.)    Gibbs told Canale that the photograph was "from last summer . . . ."  (Sept. 5, 2012 Tr. 24.)    Canale subsequently sent a photograph that he represented as "a 'pic' of me."   (Sept, 5, 2012 Tr. 25-26.) Canale then asked Gibbs "you ever take nude 'pics?'" and Gibbs responded "[j]ust one time."  (Sept. 5, 2012 Tr. 26.)    Later in the conversation, Gibbs explained that the following exchange occurred:

> [T]he individual stated to me that he had long fingers to which I applied 'k' which is short for okay.
> And then he went on the next question was you ever finger your pussy? I replied, yeah.
> To which he replied you like it? I replied, yeah, I call it tickling my pearl.  He replies, LOL, which

27

is shorthand for laughing out loud to which he replied I would like to lick your pearl.

(Sept. 5, 2012 Tr. 26-27.)[11]

### 2. December 1, 2011 Conversation

On December 1, 2011, Canale resumed his chat with Gibbs. (Sept. 5, 2012 Tr. 27.) Because Canale and Gibbs "had friended each other it changed [Canale's] screen name [to] Chuck C." (Sept. 5, 2012 Tr. 27.) Again, on December 1, 2011, Canale and Gibbs discussed the age difference between Canale and the undercover persona. (Sept. 5, 2012 Tr. 27.) Gibbs explained that Chuck C stated: "you could have said, no, I'm an old pervert, to which I replied 30 is not old, to which Chuck C. replied your old, 14." (Sept. 5, 2012 Tr. 27-28.) Gibbs then explained that the following exchange occurred:

> Chuck C stated that I want to run my hands all over you and kiss every inch of your body.
> . . . .
> To which I replied, "k" which is shorthand for, okay, that gave me goosebumps.
> To which Chuck C replied is that good or bad? To which I replied good and he replied with a smiley face.
> I replied to that I guess I got a good imagination, I can feel you doing it, to which Chuck C replied, nice, and then he went on to say I hope to do it and I reply, awe, more goosebumps.
> To which Chuck C replied handcuff you to a bed, fully clothed, then pull your shirt up so you're blindfolded. I would then slowly strip, massage, kiss

---

[11] For the quotations from the September 5, 2012 trial transcript, the Court does not alter the text to correct punctuation, spelling or grammatical errors.

and touch your whole body, to which I replied just
heard a horn, be right back.

(Sept. 5, 2012 Tr. 28.)

### 3. December 5, 2011 Conversation

On December 5, 2011 through the early hours of December 6,

2011, Canale resumed his chat with Gibbs. (Sept. 5, 2012

Tr. 28-29.) Gibbs recounted the following exchange took place:

> Starting at approximately 11:48:20 p.m. Chuck C
> state[d] would you want me to touch you? To which I
> replied you would have to handcuff me to the bed and
> to which he replied, LOL. You like that idea? And to
> which I replied I told you I have a taking risks part
> of me and that's like, a real big thing. To which he
> replies with a smiley face of a devil, to which I
> reply with a smiley face of an angel next to a devil.
> . . . .
> 11:56:48 p.m. Chuck C states I'll hold you down
> and feel you all over and to which I reply I hope my
> mom doesn't wake up, I'm probably red all over. To
> which Chuck C replies, LOL, or laugh out loud. To
> which Chuck C replies I will be []tempted to stick my
> dick in your pussy.
> . . . .
> I reply she's a pretty good sleeper when she goes
> to bed. That's how I have been able to sneak out of
> the house some, to which Chuck C replies good.
> And I reply and I would be tempted to -- oh, I
> wouldn't be able to anything about it. To which he
> replies would you like it if I grabbed you and
> fingered your pussy for a while? Which I replied
> again I wouldn't be able to "sugar tingles" do
> anything about it now would I.
> Then I asked him would handcuffs hurt? To which
> he replied, nope. And then I replied I mean would –
> well, I guess I'm getting sleepy. And then I asked
> how would you do it? Chuck C replied handcuff you,
> question mark, to which I replied, yep. And then I
> also stated I'm trying to draw the picture in my mind
> to which Chuck C – and by this time we are in the
> early morning hours 12:03:28 a.m.

Chuck C states, well, you want me to force you or would you hold your hands out? To which I replied I would hold my hands out. And Chuck C replied I would put you on your stomach and handcuff you behind your back and then I replied "k" which is shorthand for okay, to which Chuck C replied and do whatever I wanted to you.

Q: Okay. Again what did you respond?

A: I replied would I have clothes on? Chuck C replied, at first, I replied "k," which Chuck C replied I don't know. I tend to go as it happens.

And then Chuck C replied do you want to suck my dick? Which I replied "k" I guess it's more fun that way. I would be at your mercy. I haven't tried that but then I haven't been with anyone that I wanted to.

(Sept. 5, 2012 Tr. 29-31.) During the same chat, Chuck C and Gibbs discussed meeting one another. (Sept. 5, 2012 Tr. 31.) Gibbs testified:

At 11:33:55 p.m. Chuck C talks or writes you like the idea of us meeting? To which I applied [sic] if we can do it and not get caught.

. . . .

At 12:22:34 a.m. Chuck C writes where would you want to meet? To which I replied – and this is sometime while sending messages back and forth. Somebody may be typing faster from the other person so you some time get conversations that are a little disjointed so I want to apologize for that.

Chuck C says where would you want to meet? I reply what you going to do, take my cell phone? Which he replies, LOL.

Then I reply that little park near my house is really good after the library closes. There is no one there and it's real secluded. There's nothing but park benches though and he replies okay. What park is it? And I replied that it's not really a park, it's like a little path and a little garden type thing that's beside the library in Crocker.

. . . .

. . . Chuck C replies what's your address? Which I reply you can't come to my house. I would be afraid of my mom busting us. It would have to be somewhere else and Chuck C replies I'm trying to find that park.

And I reply, oh, it's at the Crocker Library and I
live in the area across the street from it.
. . . Chuck C then states, I see, I think I
found it.

(Sept. 5, 2012 Tr. 32-33.)

### 4. December 7, 2011 Conversation

On December 7, 2011, Canale and Gibbs resumed their

conversation. Gibbs testified that he stated:

> [Y]ou know, I don't even know your name, except it
> might be Chuck C, mine's Claire. And if you're mad at
> me for being stern, its Claire Marie, and if you're
> about to beat my butt it's Claire Marie Gately. At
> that point Chuck C replies it's Chuck and I replied I
> thought it might be.

(Sept. 5, 2012 Tr. 33.)   Gibbs also testified that the two

discussed meeting again:

> At 9:25:55 p.m. Chuck C replies, thanks. When would
> you want to meet? To which I replied, oh, emoticons
> with an angel next to a devil.
>     Chuck C said I would meet tonight if it wasn't
> raining and I had other things to do.
>     . . . .
>     . . . 9:26:57 I stated I really would have
> better luck on a school night or probably best on a
> Friday night. . . .
>     Then Chuck C then asked is Friday good? And then
> I reply, yeah, and then where is the jumping up and
> down and tingling button meaning the emoticon? He
> replies, LOL, and I replied, well, I don't know if I
> can type state, meaning straight, and then I go I mean
> straight, and he replies with a smiley face emoticon.
>     Then I reply how would you want to meet and
> stuff? And Chuck says, "IDK" which is short hand for
> I don't know, dot, dot, dot, that place by the
> library. And I reply my mom should be in bed around
> 10 or 11 for sure and I wouldn't have a problem
> getting out of the house. Then I say "k" that will be
> the best and then what? Then Chuck C replies, okay,
> cool, what would you want to do?

31

. . . .

To which I reply what would you want me to wear
and would you want me to bring anything? I would be
at your command. Chuck C then replies "IDC," which I
take to mean I don't care what you wear. What could
you bring? And I reply I don't know me and he replies
LOL.

At that point I then say I guess I got that from
my mom when she goes somewhere to see somebody she
always asks if she can bring something which she
replies, LOL, okay.

Then I replied tell me what you will do to me?
And he replies I don't know. And I reply it will give
you something to think about. He replies kiss you,
touch you. . . . . He replies wherever I felt like.

And then I went tell me. And then he goes - I go
I'm getting wet thinking about it. Chuck C replies
your chest, butt, pussy, and I replied, oh, and then I
replied and what else? Which Chuck C replies your
neck and hair and at which point I say, oh, and what
else? And then Chuck C says, hey, I'm sorry, got to
go.

(Sept. 5, 2012 Tr. 33-35.)

### 5. December 8, 2011 Conversation

On December 8, 2011, the chat conversation resumed. (Sept.

5, 2012 Tr. 35.) Chuck C asked "you want to leave me a pair of

your panties for me to find?" (Sept. 5, 2012 Tr. 36.) Gibbs

explained that she would not be able to meet up with Canale as

planned because her mother and father switched weekends of

custody and she would be at a party with her father that night

and with her father all weekend. (Sept. 5, 2012 Tr. 36.) Gibbs

agreed to "leave a pair, meaning the panties, in my little park

for you to get but you have to leave . . . something to remind

me of you." (Sept. 5, 2012 Tr. 36.) Gibbs indicated that they

could not "sit and talk tonight" because "I've got a test tomorrow and I will be a wreck if I did." (Sept. 5, 2012 Tr. 36.) Gibbs testified that he went to Walmart after the chat ended, and purchased "a stuffed pony, a pair of size five women's panties, white panties, a bottle of Walmart knock-off perfume that's supposed to smell like Victoria Secret, purple glitter pen and a high school ruled notebook." (Sept. 5, 2012 Tr. 37-38.) Gibbs testified:

> I take the items to the picnic bench located in the
> little park area . . . and I write a short note
> basically saying that I'll miss you with purple
> glitter pen. I then take the horse, spray a little
> bit of perfume on it, take the panties and ruffle them
> up a bit so they don't look new out of the package and
> spray a little perfume on those. I had the horse
> positioned so his front legs are holding the panties
> and this was done at approximately 10:30 p.m.

(Sept. 5, 2012 Tr. 38.) Gibbs testified that he returned to the park area the next morning and the items were gone. (Sept. 5, 2012 Tr. 38.)

### 6. December 11, 2011 Conversation

On December 11, 2011,[12] Gibbs again resumed his chat with Canale. (Sept. 5, 2012 Tr. 38.) Gibbs and Canale agreed to meet on Friday, because "[t]eachers are loading us up with tests this week because of being Christmas" after 10 p.m., "so my mom

---

[12] The trial transcript states that this conversation occurred on December "110th." (Sept. 5, 2012 Tr. 38.) It is evident from the record that this conversation occurred on December 11, 2011.

33

is good and asleep." (Sept. 5, 2012 Tr. 39.) In that same chat conversation, Gibbs sent Canale an unopenable file that was supposed to contain a nude photograph of the victim. (Sept. 5, 2012 Tr. 40-41.) In response to a request for a photograph, Canale replied: "[T]his is a new laptop, I just have a picture of my cock." (Sept. 5, 2012 Tr. 41.) Gibbs explained that

> Chuck C then says or asks want to see? Which I reply if you want to. It won't scare me into meeting you, will it? It won't, like, split me in two, will it? And he replies it might.
>     Q:    Okay.   And did you then receive – did that person send you a photograph?
>     A:    Yes, he did.

(Sept. 5, 2012 Tr. 41-42.) Gibbs testified that he took a screen capture of the photograph of male genitalia and the chat of the text conversation displayed on his computer and then printed it out. (Sept. 5, 2012 Tr. 42.) Gibbs explained that after he received the photograph

> Chuck C writes your pussy might be too small. I replied to that I don't know, it's wet though. To which Chuck C replies I don't want to hurt you. Which I reply, awe, if it would hurt you would stop if I asked you even though you had me handcuffed? Which he replied if you asked me to stop I would. Which I reply I believe you.
>     Which Chuck C replied I want you to suck on it to which I reply you're nice and like me and I know you now and I trust you, okay, and then I go on to say and I like you. And then I go I don't think I can handle it all in my mouth though which Chuck C replies that's okay.
>     Chuck C then goes on to say or asks would you be mad if I came in your mouth? To which I replied "us" would have to teach me what to do.

Then I go on to say what would it taste like?
Would it be all yucky and stuff and that's where guys
pee? Chuck C replies I don't know what it tastes
like. I hear it's kind of salty tasting. I reply,
"k," I like salt.
. . . .
Then I add wouldn't get pregnant that way and
Chuck C replies not in your mouth and then I reply I
know silly which he replies LOL.

(Sept. 5, 2012 Tr. 44-45.)

### 7.  December 13, 2011 Conversation

On December 13, 2011, Gibbs and Canale resumed their chat

conversation and discussed what the victim would wear.  (Sept.

5, 2012 Tr. 45-46.)  Canale indicated that he wanted to "finger

[her] pussy," and he told her that the next time they met "I

might take you to a hotel room with a hot tub and we can fool

around in there . . . ."  (Sept. 5, 2012 Tr. 46.)

### 8.  December 15, 2011 Conversation

On December 15, 2011, the night before the two were to

meet, Gibbs and Canale again had a chat conversation.  (Sept. 5,

2012 Tr. 47.)  Gibbs explained:

I asked Chuck C are you excited about tomorrow night?
He replied yes. I reply me, too, he replied LOL.
I reply I can't believe I don't have to sneak out
either. He replies cool.
And I said, oh, I got a B on my Algebra test, he
replies nice job. And I reply for me in math that's
good and I get a smiley face from him.
I then ask when do you get off work tomorrow? He
replies I don't know yet. And I reply, oh, it's one
of those type jobs, my mom's is kind of like that and
he says, yeah, it depends on what is going on and I
reply "k" for okay.

I then state will you still be able to see me?
And he replies, yeah, I just don't know when I'll be
there right now. And I reply "k." How will I know to
meet you? And he replies when will it be good for
you? And I reply, well, 7 will be good if you could.
I thought the library didn't close until 9 but it
closes at 6 on Friday. He replies I don't know if I
can be there that early. And then he asks does 8 or 9
work for you? I replied "k."

When you think could - when you think you could?
It's supposed to rain some and I didn't want to hang
out in the rain waiting and then I [re]plied 8 is
great.

And then I asked I hope you have a comfy car
because it's going to suck sitting out in the rain and
he replies I will see you at 8. . . .

. . . .

I then say how will I know it's you? And he
replies I'll have your horse and I go awe. I said are
you taking good care of little Cash, Cash being the
name of my stuffed horse? And he replies, yep. I
then ask are you feeding him good? He replies I am.

(Sept. 5, 2012 Tr. 47-49.)

### 9. Scheduled Meeting and Arrest

On Friday, December 16, 2011, Gibbs and five other
investigators waited at Crocker Library for Canale to arrive.
At approximately 8:00 p.m., Canale arrived in a 2009 red Mini
Cooper and drove near the library. (Sept. 5, 2012 Tr. 50-51.)
Gibbs and Investigator Shadrix immediately approached the
stopped vehicle and Gibbs saw the person he recognized from the
photographs Canale had sent him in the car by himself. (Sept.
5, 2012 Tr. 51.) Canale was placed under arrest and was
identified from his Department of Navy identification and
driver's license. (Sept. 5, 2012 Tr. 52.) A search of the

vehicle yielded the stuffed horse and women's panties that Gibbs had dropped off at the location near the Crocker Library. (Sept. 5. 2012 Tr. 55-56.) The search also yielded an open package of nylon rope. (Sept. 5, 2012 Tr. 56.) The internet service provider provided Gibbs with the street address associated with the IP address that the individual used to chat with Gibbs. (Sept. 5, 2012 Tr. 59.) Gibbs then obtained a search warrant for the address and the officers found an open box of Fire and Ice condoms on the floor of his bedroom that were consistent with the Fire and Ice condom found on Canale's person after his arrest. (Sept. 5, 2012 Tr. 61, 98.) The carpet in Canale's bedroom had a pattern consistent with the carpet in the background of the photograph of the male genitalia sent to Gibbs. (Sept. 5, 2012 Tr. 62.)

Lietenant Scott Little, a digital forensics expert, testified that he examined two laptops, an iPad, and iPhone that were found in Canale's home. (Sept. 5, 2012 Tr. 119-20.) Little testified that the user names on the laptops were "Chuc" and "headhunter." (Sept. 5, 2012 Tr. 122.) Scott also explained that Yahoo! messenger builds a folder for every person that a person chats with and the laptop had a folder for "ridergurl80" and Canale had searched using the term "ridergurl80" in his internet browser. (Sept. 5, 2012 Tr. 123-24.) Little also found thousands of hits when he searched the

term "ridergurl80" on the laptop including, for example, remnants of chat messages between "headhunter" and "ridergurl80" with a message sent by "ridergurl80" that stated, "well, the 'pic' was me standing in the bathroom. My hair is the same as it was in my Putney 'pic.' It's shorter now. My boobies aren't big. . . ." (Sept. 5, 2012 Tr. 126.) Little also testified that he found images of prepubescent child pornography on the laptops and a photograph of male genitalia on one of the laptops. (Sept. 5, 2012 Tr. 29, 134-35.) Little found three videos of a "younger, if not prepubescent, child masturbating," on the iPhone. (Sept. 5, 2012 Tr. 137.)

The Circuit Court found that overwhelming evidence existed to convict Canale of all seven indictments.

### B. Claim Two: Sufficiency of the Evidence

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support

a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 318.

In Claim Two, Canale argues that "[t]he trial court erred in upholding the trial court's decision to deny Canale's motions to strike because the Commonwealth had not proved beyond a reasonable doubt that Canale knew or should have known that "ridergurl80" was under 15-years-old — insufficient evidence under the Fourteenth Amendment." (Mem. Supp. § 2254 Pet. 8.) In finding that the claim presented in the state court lacked merit, the Court of Appeals of Virginia explained the following:

> "On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

> Code § 18.2-374.3(C) provides:

> It shall be unlawful for any person 18 years of age or older to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means, for the purposes of soliciting, with lascivious intent, any person he knows or has reason to believe is a child less than 15 years of age to knowingly and intentionally:

> 1. Expose his sexual or genital parts to any child to whom he is not legally married or propose that any such child expose his sexual or genital parts to such person;

39

2. Propose that any such child feel or fondle the sexual or genital parts of such person or propose that such person feel or fondle the sexual or genital parts of any such child;

3. Propose to such child the performance of an act of sexual intercourse or any act constituting an offense under § 18.2-361; or

4. Entice, allure, persuade, or invite any such child to enter any vehicle, room, house, or other place, for any purposes set forth in the preceding subdivisions.

The evidence showed appellant conversed with the on-line persona created by Gibbs in an internet chat room. Transcripts of the conversations between appellant and the victim were admitted into evidence. One of these documents showed appellant asked the victim her age and she responded she was fourteen years old. In other conversations, appellant remarked that he was "so much older" than the victim and "I'm kind of old for you." He also referred to the victim's age as fourteen. Upon appellant's request for a photograph, Gibbs testified he sent appellant a photograph of an officer that was taken when the officer was approximately fourteen years old. When appellant requested an item that belonged to the victim, Gibbs provided a stuffed animal.

The courts of this Commonwealth have long recognized that "[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). Moreover, "[t]he Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). From the evidence presented, the trial court could conclude appellant knew or should have known the victim was fourteen years old. Accordingly, the

> evidence was sufficient to prove this element of the
> offenses beyond a reasonable doubt.

(ECF No. 12-2, at 2-3.) The Court discerns in the state court decision no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2). Indeed, any rational factfinder would conclude that Canale was aware that "ridergurl80" was under fifteen years old.

The transcripts of the chats are replete with evidence that would have reasonably led Canale to believe the victim was fourteen. The victim identified herself as fourteen, sent a photograph of an underage female as a representation of herself, frequently made references to her homework, exams, her parents, sneaking out, and generally seemed sexually naïve. Thus, after reviewing the evidence and credibility determinations "in the light most favorable to the prosecution, [a] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (citing Johnson, 406 U.S. at 362). Accordingly, Claim Two lacks merit and will be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Clarke's Motion to Dismiss (ECF No. 10) will be granted. Canale's § 2254 Petition will be

denied and the action will be dismissed.  A certificate of appealability will be denied.

The Clerk is directed to send a copy of this Memorandum Opinion to counsel of record.

It is so ORDERED.

_____  /s/  _____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August _11_, 2017